Slip Op. 08-2

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CONSOLIDATED FIBERS, INC., STEIN FIBERS, LTD., BERNET INTERNATIONAL TRADING, LLC, AND BMT COMMODITY CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Public Version<br><br>Before: Leo M. Gordon, Judge<br><br>Court No.  06-00134 |

**OPINION**

[Plaintiffs' motion for judgment on the agency record denied.]

Dated: January 10, 2008

deKieffer & Horgan (Gregory S. Menegaz, Merritt R. Blakeslee, J. Kevin Horgan) for Plaintiffs Consolidated Fibers, Inc., Stein Fibers, Ltd., Bernet International Trading, LLC, and BMT Commodity Corporation.

James M. Lyons, General Counsel, Neal J. Reynolds, Assistant General Counsel for Litigation, Karl von Schriltz, Attorney-Advisor, United States International Trade Commission, for Defendant.

Kelly Drye Collier Shannon (Paul C. Rosenthal, Kathleen W. Cannon, David C. Smith, Jr.) for Defendant-Intervenors Dak Fibers, LLC, Invista S.a.r.l., and Wellman, Inc.

Gordon, Judge:  Plaintiffs move for judgment on the agency record pursuant to USCIT R. 56.1, challenging the United States International Trade Commission's ("Commission") refusal to reconsider the original injury determination underlying the antidumping duty order on polyester staple fiber ("PSF") from Korea and Taiwan. For the reasons set forth below, the court denies Plaintiffs' motion.

## I. Background

In March 2005 the Commission instituted five-year reviews ("sunset reviews") of the antidumping duty orders on PSF from Korea and Taiwan.  After the sunset reviews commenced, Plaintiffs (importers of PSF) discovered evidence that some domestic producers of PSF had allegedly conspired to fix PSF prices and allocate customers during the original period of investigation and part of the sunset review period.  Plaintiffs were eager to share this information with the Commission because a comparable revelation in another proceeding had led the Commission to rescind the original injury determinations in that proceeding.  See Ferrosilicon From Brazil, China, Kazakhstan, Russia, Ukraine, and Venezuela, Inv. Nos. 303-TA-23, 731-TA-566-570 and 731-TA-641 (Reconsideration), USITC Pub. 3218 (Aug. 1999) at 3, 8 ("Ferrosilicon Reconsideration").

In the Ferrosilicon Reconsideration the Commission learned of a criminal price-fixing conspiracy among the domestic ferrosilicon producers through the Brazilian ferrosilicon producers' request for a changed circumstances review pursuant to Section 751(b) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1675(b) (2000).[1]  Troubled by the revelation of an antitrust conspiracy affecting pricing in the domestic ferrosilicon market, the Commission took the unprecedented step of sua sponte suspending the changed circumstances proceedings and commencing "reconsideration" proceedings to review the original injury determinations underlying the antidumping and countervailing duty orders on ferrosilicon.  Ferrosilicon From Brazil, China, Kazakhstan, Russia,

---

[1] Further citations to the Tariff Act of 1930 are to the relevant provision in Title 19 of the U.S. Code, 2000 edition.

Ukraine, and Venezuela, 64 Fed. Reg. 28,212 (Int'l Trade Comm'n May 25, 1999)

(notice of suspension of changed circumstances review and commencement of

reconsideration proceeding).  In the course of those reconsiderations, the Commission

discovered that in the original investigations the domestic ferrosilicon producers had

misrepresented that the "U.S. ferrosilicon market was driven by unfettered price

competition," when in fact, "three ferrosilicon producers, representing a significant

majority of 1993 U.S. production, had been convicted of conspiring to fix domestic

prices of commodity ferrosilicon" during a "substantial portion of the time period on

which the Commission based its original determination."  Ferrosilicon Reconsideration

at 3, 8.  Because "[t]he Commission's statute and longstanding Commission precedent

place the nature of price competition at the center of its injury analysis," id., the

Commission concluded that the "actions by the domestic producers seriously

undermined the integrity of the Commission's proceedings and compromised the

deliberative process, and in a broader sense, constituted an abuse of the unfair trade

laws [the Commission] administer[s]."  Id.

The Commission ultimately reversed its original injury determinations and issued

negative injury determinations for each of the ferrosilicon investigations.  Id. at 1, 4.  The

United States Department of Commerce ("Commerce") subsequently "rescinded" the

antidumping and countervailing duty orders covering the subject imports, explaining that

the Commission's negative injury determinations on reconsideration had "rendered [the

orders] legally invalid from the date of issuance."  Ferrosilicon From Brazil, Kazakhstan,

People's Republic of China, Russia, Ukraine, and Venezuela, 64 Fed. Reg. 51,097,

51,098 (Dep't of Commerce Sept. 21, 1999) (notice of rescission of antidumping duty

orders).

Returning to the facts of the PSF case under review here, on October 26, 2005, Plaintiffs filed a letter with the Commission requesting that the Commission institute a proceeding to reconsider the original PSF injury determinations because of new evidence that certain domestic producers conspired to fix PSF prices and allocate customers during the original period of investigation and part of the sunset review period.  As support, Plaintiffs cited the guilty pleas of KoSa, a domestic producer of PSF, and Troy Stanley, a KoSa employee, in a criminal antitrust case brought by the United States Department of Justice, and agreements from three other domestic PSF producers settling civil antitrust litigation, among other documents.  Plaintiffs argued that like the Ferrosilicon Reconsideration the conspiracy had compromised the integrity of the Commission's original investigations and that the Commission should therefore institute a reconsideration proceeding to determine whether to revoke the antidumping duty orders.

Unlike its approach in the Ferrosilicon Reconsideration, the Commission did not commence a reconsideration of the PSF original injury determinations.  Instead, on December 19, 2005, the Commission issued a letter denying Plaintiffs' reconsideration request "at this time."  Subsequently, Plaintiffs and petitioners, Defendant-Intervenors here, addressed the alleged antitrust conspiracy in their briefs and final comments filed in the sunset reviews, and submitted documentary evidence for their respective claims. Plaintiffs reiterated and expanded upon the arguments made in their October 26, 2005 letter.  They again invoked the Commission's Ferrosilicon Reconsideration to argue that the Commission should revoke the antidumping orders on PSF from Korea and Taiwan

ab initio because an alleged conspiracy among certain domestic producers to fix prices and allocate customers during a portion of the period examined in the original investigation had compromised the integrity of the original investigative record. Plaintiffs also requested that the Commission "order discovery" and "force domestic producers to dislodge information concerning the conspiracy," including all discovery taken and all written and deposition testimony from the civil antitrust litigation. Due to the volume of these materials, Plaintiffs requested that the Commission extend the sunset reviews by 90 days.

Defendant-Intervenors argued that Plaintiffs' price-fixing allegations and documents concerned a conspiracy to fix prices and allocate customers for fine denier PSF used in textile spinning applications, a product not subject to the antidumping duty orders on PSF from Korea and Taiwan. They also argued that the alleged PSF antitrust conspiracy was unlike the Ferrosilicon Reconsideration antitrust conspiracy in that the overlap between the conspiracy and the period of investigation was minimal, and individuals who participated in the conspiracy had not participated in the Commission's investigation.

The Commission conducted a public hearing on January 17, 2006. At the hearing, Plaintiffs and Defendant-Intervenors provided testimony and answered questions on the alleged antitrust conspiracy. In response to Commissioner questions at the hearing, Defendant-Intervenors provided additional documents relevant to Plaintiffs' allegations as attachments to their posthearing brief.

Thereafter, the Commission gathered certain information from a source [[

]].[2]  On March 20, 2006, the Commission issued its final decision on the matter, rejecting Plaintiffs' reconsideration request in a detailed analysis that the Commission chose to include in its final views for the sunset reviews of PSF from Korea and Taiwan. See Certain Polyester Staple Fiber From Korea and Taiwan, Inv. Nos. 731-TA-825 and 826 (Final), USITC Pub. 3843 (Mar. 2006) Conf. Views at 21-32, Pub. Views at 16-23 ("PSF Reconsideration Denial").  The Commission interpreted Plaintiffs' argument that the Commission should revoke the antidumping duty orders ab initio as a renewal of their request for institution of a reconsideration proceeding because the Commission lacks the authority to revoke antidumping duty orders and the Commission believed it could not reconsider its original determinations within the scope of the sunset reviews. PSF Reconsideration Denial Pub. Views at 18.

The Commission addressed the alleged antitrust conspiracy and concluded:

> [T]he weight of the voluminous record evidence indicates that any conspiracy was primarily limited to non-subject PSF, and that record evidence does not support the proposition that any conspiracy extended to certain PSF [subject to the antidumping duty order]. The information relied upon by respondents is generally indirect or inconclusive, and requires assumptions that are contradicted by other evidence.

Id. at 22.  Having found that the antitrust conspiracy to which KoSa and Mr. Stanley pled guilty targeted fine denier PSF and not the PSF subject to the antidumping duty order,

---

[2] [[



                                                                              ]]

(Citations to confidential documents from the Administrative Records are cited "CR" followed by the document number.)

the Commission concluded that circumstances did not warrant institution of a reconsideration proceeding. Id. at 22-23.

The Commission also distinguished its actions in the Ferrosilicon Reconsideration in which the Commission "suspended a changed circumstances review, and self-initiated a separate reconsideration proceeding, based on 'extraordinary circumstances. . . that strike at the heart of the administrative process': the criminal conviction of three domestic producers for price fixing, when ferrosilicon pricing was the 'focal point' of the original investigations, and evidence that these domestic producers 'made material misrepresentations and omissions throughout the investigation relating to that issue.'" Id. at 23 (quoting Ferrosilicon Reconsideration at 7-8).

For the alleged antitrust conspiracy related to PSF, the Commission found that record evidence did not support Plaintiffs' allegation that KoSa's antitrust violations had undermined the integrity of the original investigation because petitioners' evidence and testimony in the original investigation was consistent with an antitrust conspiracy targeting fine denier PSF, not the PSF subject to the antidumping duty order. Id. The Commission also found Plaintiffs' claim that the conspiracy had inflated underselling margins to be unsupported by the record, as underselling margins generally narrowed in the only two quarters of the original period of investigation that coincided with the antitrust conspiracy to which KoSa pled guilty. The Commission therefore denied Plaintiffs' request for institution of a reconsideration proceeding. Id.

The Commission also denied Plaintiffs' request for a 90-day extension of the reviews to conduct "discovery" into documents allegedly possessed by Defendant-

Intervenors. Id. at 22 n.158. The Commission explained that its reviews are conducted according to statutory provisions, regulations, and scheduling orders that do not provide for formal discovery. Id. The Commission added that Defendant-Intervenors had provided additional relevant documents in response to Commissioner questions at the hearing, and that it was "satisfied with the completeness of the record." Id. at 23. Finally, the Commission observed that "ascertaining antitrust violations based upon conflicting or ambiguous evidence submitted in civil antitrust proceeding" — the type of evidence Plaintiffs wanted the Commission to collect given that the civil litigation had been settled — "is outside the Commission's expertise." Id.

## II. Jurisdiction

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(2) & (4) (2000), which among other things, supplies jurisdiction for Administrative Procedure Act ("APA") claims challenging the administration and enforcement of the antidumping laws by the Commission.   The Commission and Defendant-Intervenors previously filed separate motions to dismiss this action for lack of subject matter jurisdiction, contending that the Commission's denial of Plaintiffs' reconsideration request is not reviewable because there are no statutory or regulatory provisions governing a reconsideration proceeding and it is therefore an "agency action . . . committed to agency discretion by law," 5 U.S.C. § 701(a)(2) (2000), a jurisdictional limitation for APA claims that applies to the general grant of jurisdiction contained in 28 U.S.C. § 1581(i) (2000). Cf. ICC v. Bhd. of Locomotive Eng'rs, 482 U.S. 270, 282 (1987) (noting that the limitation of 5 U.S.C. § 701(a)(2) applies to "the general grant of jurisdiction contained in 28 U.S.C. § 1331.").

The court denied the motions to dismiss.  Consolidated Fibers, Inc. v. United States, 30 CIT ___, ___, 465 F. Supp. 2d 1338, 1344 (2006).  The Commission and Defendant-Intervenors filed separate motions for the court to reconsider its denial of their motions to dismiss count two or, in the alternative, to certify the jurisdictional issue for interlocutory appeal.  The court denied the motions because, in the court's view, the standards for reconsideration or for certification were not satisfied.

In their briefs opposing Plaintiffs' motion for judgment on the agency record, the Commission and Defendant-Intervenors renew their objections to the court's exercise of jurisdiction, repeating their argument that no specific statute or regulation governs the Commission's conduct of a reconsideration proceeding, meaning there is "no law to apply," Heckler v. Chaney, 470 U.S. 821, 830 (1985) (quoting Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 410 (1971)) and that agency decisions with respect to reconsideration proceedings are "committed to agency discretion by law," 5 U.S.C. § 701(a)(2) (2000).  Def.'s Resp. to Pls.'s Mot. for J. on the Agency R. at 2-3. The court previously addressed the jurisdictional issue as follows:

> The general rule is that an agency's denial of a petition for reconsideration is committed to agency discretion and not subject to judicial review unless the request is based on "new evidence or changed circumstances," in which case the court evaluates whether "the refusal to reopen was 'arbitrary, capricious, [or] an abuse of discretion.'" [ICC v. Bhd. of Locomotive Eng'rs, 482 U.S. 270, 278-79 (1987)] (quoting 5 U.S.C. § 706(2)(A)); see also, AT&T Corp. v. FCC, 363 F.3d 504, 507-08 (D.C. Cir. 2004); Southwestern Bell Tel. Co. v. FCC, 180 F.3d 307, 311 (D.C. Cir. 1999) ("a petition seeking review of an agency's decision not to reopen a proceeding is not reviewable unless the petition is based upon new evidence or changed circumstances.").  Put another way, "[i]f the petition that was denied sought reopening on the basis of new evidence or changed circumstances, review is available and abuse of discretion is the standard; otherwise, the agency's refusal to go back over ploughed ground is nonreviewable." Bhd. of Locomotive Eng'rs, 482 U.S. at 284.

The Court in Brotherhood of Locomotive Engineers was interpreting the Interstate Commerce Act, which contained three grounds for rehearing: "material error, new evidence, or substantially changed circumstances." 482 U.S. at 277 (citing 49 U.S.C. § 10327(g), current version at 49 U.S.C. § 722(c) (2000)).  Under the antidumping laws, the Commission has express statutory authorization to review its prior injury determinations upon the request of a party for a "changed circumstances" review.  19 U.S.C. § 1675(b).  An interested party, in turn, has an express statutory right of judicial review (as opposed to an APA claim) if the Commission refuses to initiate a changed circumstances proceeding.  19 U.S.C. § 1516a(a)(1)(B).  The court evaluates whether the refusal to initiate was "arbitrary, capricious, [or] an abuse of discretion," 19 U.S.C. § 1516a(b)(1)(A), the same standard applied when reviewing a denial of a reconsideration request under the APA for "new evidence or changed circumstances."  Plaintiffs here did not request a changed circumstances review because they were heeding the Commission's approach in Ferrosilicon.  Plaintiffs therefore requested that the Commission commence a reconsideration proceeding to evaluate the new evidence relating to the antitrust activity of some members of the domestic industry, just as the Commission had done in [the] Ferrosilicon [Reconsideration].

Unlike the statutory provisions for a changed circumstances review, there is no express statutory authorization for the Commission to conduct a reconsideration proceeding.  The Commission, however, has inherent administrative authority under the antidumping and countervailing duty laws to reconsider its original injury determinations, at least when fraud has been perpetrated on the agency during the underlying investigations.  See Elkem Metals Co., 26 CIT at 240, 193 F. Supp. 2d at 1321 (reviewing Ferrosilicon); see also Alberta Gas Chems., Ltd. v. Celanese Corp., 650 F.2d 9, 12-14 (2d Cir. 1981) ("It is hard to imagine a clearer case for [the Commission] exercising this inherent power than when a fraud has been perpetrated on the tribunal in its initial proceeding.").  Under Brotherhood of Locomotive Engineers, the Commission's denial of a reconsideration request is unreviewable unless the request is based on new evidence, in which case the court has jurisdiction pursuant to 28 U.S.C. § 1581(i) (2000) to review the denial under the abuse of discretion standard set forth in 5 U.S.C. § 706(2)(A) (2000).

Consolidated, 30 CIT at ___, 465 F. Supp. 2d at 1343.  The Commission argues that

the general rule of Brotherhood of Locomotive Engineers is not applicable because that

case involved a specific statute authorizing reconsideration proceedings based on "new

evidence," whereas in the instant action no specific statutory provision authorizes a reconsideration proceeding based on new evidence.  Def.'s Resp. to Pls.'s Mot. for J. on the Agency R. at 2-3.

This argument is unpersuasive for several reasons.  First, it confuses the question of specific statutory authorization with reviewability, a distinction that Brotherhood of Locomotive Engineers clarifies.  The plaintiffs in Brotherhood of Locomotive Engineers sought judicial review of the agency's refusal to conduct a reconsideration proceeding based on "material error," a proceeding specifically authorized by statute.  Despite the specific statutory authorization, the Court held that the agency's refusal to reconsider based on material error is unreviewable because there are no judicially manageable standards to review such agency action.  Bhd. of Locomotive Eng'rs, 482 U.S. at 278-84.  The Court clarified, though, that a refusal to reconsider based on new evidence or changed circumstances is reviewable, not because of a specific statutory authorization (the very same provision authorizing reconsideration for material error), but because there are judicially manageable standards against which to review the agency action.  Id. at 279.  To be sure, "there is no dearth of 'judicially manageable standards' in this context." Id. at 294 (Stevens, J., concurring); see also Magnola Metallurgy, Inc. v. United States, Appeal No. 2007-1099 (Fed. Cir. Nov. 20, 2007) (holding that Commerce's refusal to reconsider an original determination for material error is unreviewable "absent new facts or evidence," and noting that "[i]f new facts or evidence show that the original determination was erroneous, it will be revisited.").

This is an important distinction because although the Commission contends this case is unreviewable due to the lack of a specific statutory provision authorizing reconsideration proceedings to address "new evidence," it does not argue that the Commission lacks the authority to conduct such proceedings. This leads to the second deficiency with their argument: it ignores Elkem Metals Co. v. United States, 26 CIT 234, 193 F. Supp. 2d 1314 (2002), which held, consistent with what the Commission advocated in that case, that the Commission has inherent administrative authority under the antidumping statute to reconsider final determinations to consider new evidence. Id. at 239-40, 193 F. Supp. 2d at 1320-21. This inherent authority is not ethereal; it arises from the antidumping statute and the quasi-adjudicative nature of the Commission's determinations. Id. Absent this precedent, one could surmise from the relative clarity and simplicity of the Interstate Commerce Act authorizing agency rehearing for "material error, new evidence, or substantially changed circumstances," 49 U.S.C. § 722(c) (2000), that Congress granted the Commission less latitude, limiting reconsideration of antidumping determinations only in the event of "changed circumstances," 19 U.S.C. § 1675(b), and not for consideration of new evidence. The Commission, however, does not press this argument because Elkem Metals does exist; it is a precedent of the Commission's own making. Importantly, the same law that authorizes a reconsideration proceeding based on new evidence provides the standards against which to review the Commission's refusal to perform one: the antidumping statute.

In this case the authorization to reconsider based on new evidence goes hand in hand with reviewability. Contrary to the Commission's argument, the court's review of the Commission's denial of a reconsideration request to consider new evidence is not a

standard-less mystery.  It is a straightforward inquiry of whether the Commission's refusal to reconsider its original determination despite the new evidence is "arbitrary, capricious, [or] an abuse of discretion", 5 U.S.C. § 706(2)(A) (2000), when measured against the statutory factors composing the Commission's injury determination, 19 U.S.C. § 1677 (7), and the Commission's findings from the original determination.

This brings us to the third deficiency with the Commission's "no law to apply" jurisdictional argument—it ignores the Ferrosilicon Reconsideration.  In the instant action Plaintiffs discovered evidence of an antitrust conspiracy on the part of the domestic industry, just as the Brazilian ferrosilicon producers had.  Plaintiffs brought the evidence to the Commission's attention expecting that the Commission would follow the same approach of the Ferrosilicon Reconsideration.  To Plaintiffs' frustration the Commission chose a different approach.

There is a general principle of administrative law that "an agency must either follow its own precedents or explain why it departs from them."  See generally, 2 Richard J. Pierce, Administrative Law Treatise § 11.5, at 817 (4th ed. 2002).  In denying Plaintiffs' reconsideration request, the Commission distinguished the Ferrosilicon Reconsideration, explaining why similar treatment was not warranted.  Plaintiffs have a cause of action to challenge, and the court has jurisdiction to review, whether the Commission's explanation is adequate, or phrased differently, whether the different agency action in this case constitutes an "irrational departure" from the Ferrosilicon Reconsideration that is "arbitrary, capricious, [or] an abuse of discretion within the meaning of the Administrative Procedure Act."  INS v. Yang, 519 U.S. 26, 32 (1996).

### III. Standard of Review

The applicable standard governing the court's review of the Commission's denial of Plaintiffs' reconsideration request and the Commission's alleged departure from the Ferrosilicon Reconsideration precedent is whether the Commission's actions were "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A) (2000). Although this is a well-established APA standard, there is significant confusion among the parties about what this standard means and how it should be applied. The confusion appears to stem from the Federal Circuit's decision in Consolidated Bearings Co. v. United States, 412 F.3d 1266, 1269 (Fed. Cir. 2005), which seems to suggest that for review of agency findings of fact, the "arbitrary, capricious, [or] abuse of discretion" standard is the same as another well-established APA standard, the "substantial evidence" standard:

> In reviewing decisions by the Court of International Trade in actions pursuant to 28 U.S.C. § 1581(i), we apply the standard of review set forth in the APA and will "hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2); Humane Soc'y of the United States v. Clinton, 236 F.3d 1320, 1324 (Fed. Cir. 2001) ("[T]his Court will apply the standard of review set forth in 5 U.S.C. § 706 to an action instituted pursuant to 28 U.S.C. § 1581(i)."). "An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." Star Fruits S.N.C. v. United States, 393 F.3d 1277, 1281 (Fed. Cir. 2005).

> "Substantial evidence" describes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. v. Nat'l Labor Relations Bd., 305 U.S. 197, 229 (1938). To determine if substantial evidence exists, we review the record in its entirety, including all evidence that "fairly detracts from the substantiality of the evidence." Atl. Sugar, Ltd. v. United States, 744 F.2d 1556, 1562 (Fed. Cir. 1984).

Consolidated Bearings, 412 F.3d at 1269. This raises a question of whether in the Federal Circuit the same level of judicial scrutiny applies for the "arbitrary, capricious, [or] abuse of discretion" standard as for the "substantial evidence" standard.

Each of these standards is a "long established word formula." 3 Charles H. Koch, Jr., Administrative Law and Practice § 10.1 [1] (2d ed. 1997 & Supp. 2006). The word formula 'substantial evidence' connotes reasonableness review, Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350-51 (Fed. Cir. 2006); 3 Charles H. Koch, Jr., Administrative Law and Practice § 10.3 [1], and the word formula 'arbitrary, capricious, [or] abuse of discretion' connotes arbitrariness review. Id. at § 10.4 [1].[3]

As noted, the Federal Circuit's decision in Consolidated Bearings seems to suggest that arbitrariness review is the same as reasonableness review for findings of fact. This is consistent with the D.C. Circuit, which has long held that there is no difference between the two standards in their application to agency factfinding:

> . . . in their application to the requirement of factual support the substantial evidence test and the arbitrary or capricious test are one and the same. The former is only a specific application of the latter, separately recited in the APA not to establish a more rigorous standard of factual support but to emphasize that in the case of formal proceedings the factual support must be found in the closed record as opposed to elsewhere. We shall elaborate upon this point because it is not uncommon for parties to expend great effort in appeals before us to establish which of the two standards is applicable where in fact their operation is precisely the same.

---

[3] The "arbitrary, capricious, [or] abuse of discretion standard" combines two "roughly equivalent" word formulas, 'arbitrary [or] capricious' and 'abuse of discretion.' 3 Charles H. Koch, Jr., Administrative Law and Practice § 10.6 [1] (2d ed. 1997 & Supp. 2006). The equivalence is such that "the restatement of the ABA, Section of Administrative Law and Regulatory Practice found: 'No distinctions are drawn among the 'terms' arbitrary, capricious, [or] an abuse of discretion in § 706(2)(A).' " Id. (quoting Ronald Levin, Scope-of-Review Doctrine Restated: An Administrative Law Section Report, 38 Admin.L.Rev. 239, 292 (1986)).

. . .

> . . . it is impossible to conceive of a "nonarbitrary" factual judgment supported only by evidence that is not substantial in the APA sense . . . .

Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Reserve Sys.,

745 F.2d 677, 683-84 (D.C. Cir. 1984);  Mem'l Hosp./Adair County Health Ctr., Inc. v.

Bowen, 829 F.2d 111, 117 (D.C. Cir. 1987) (Substantial evidence and arbitrary and

capricious standards "require equivalent levels of scrutiny."); Sithe/Independence Power

Partners, L.P. v. FERC, 285 F.3d 1, 5 n.2 (D.C. Cir. 2002) ("Arbitrary and capricious

simply means unreasonable.").

The Federal Circuit, though, has previously indicated that the two standards do

require different levels of scrutiny:

> The Supreme Court has indicated that the "arbitrary, capricious" standard of review is highly deferential. Under that standard, a reviewing court "must consider whether the decision was based on a consideration of relevant factors and whether there has been a clear error of judgment." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971). Because this standard is generally considered to be the most deferential of the APA standards of review, see e.g., 6 Stein et al., Administrative Law § 51.03, at 51-117 (1999) ("The narrowest scope of judicial review of an agency['s] fact findings is afforded by the arbitrary, capricious, or abuse of discretion test."), the reviewing court analyzes only whether a rational connection exists between the agency's factfindings and its ultimate action, see Hyundai Elecs. Indus. Co. v. ITC, 899 F.2d 1204, 1209 (Fed. Cir. 1990) (noting that the "touchstone" of the "arbitrary, capricious" standard is rationality); see also 6 Administrative Law § 51.03, at 51-128.

> On the other hand, the "substantial evidence" standard asks whether a reasonable fact finder could have arrived at the agency's decision, see Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938); see generally 3 Charles H. Koch, Jr., Administrative Law and Practice § 10.3[1], at 22-26 (2d ed.1997), and is considered to be a less deferential review standard than "arbitrary, capricious." See American Paper Inst., Inc. v. American Elec. Power Serv. Corp., 461 U.S. 402, 412-

13 n. 7 (1983) (characterizing the "arbitrary, capricious" standard as "more lenient" than the "substantial evidence" standard); Abbott Lab. v. Gardner, 387 U.S. 136, 143 (1967) (characterizing "substantial evidence" review as "more generous judicial review" than "arbitrary, capricious" review).

In re Gartside, 203 F.3d 1305, 1312 -13 (Fed. Cir. 2000).  Gartside was issued prior to

Consolidated Bearings and is therefore controlling.  See Newell Cos. v. Kenney Mfg.

Co., 864 F.2d 757, 765 (Fed. Cir. 1988) ("prior decisions of a panel of the court are

binding precedent on subsequent panels unless and until overturned in banc").

Accordingly, in reviewing the Commission's denial of Plaintiffs' reconsideration

request and the Commission's alleged departure from the Ferrosilicon Reconsideration

precedent for arbitrariness, the court (1) must consider whether the decision was based

on a consideration of relevant factors and whether there has been a clear error of

judgment, and (2) analyze whether a rational connection exists between the agency's

factfindings and its ultimate action.  Gartside, 203 F.3d at 1312; see also 3 Charles H.

Koch, Jr., Administrative Law and Practice §§ 10.1[1], 10.3, 10.4, 10.6 (2d ed.1997 &

Supp. 2006). [4]

---

[4] An aspect of arbitrariness review is the hard look doctrine in which the court looks for signs or "danger signals" that the agency has failed to take a hard look at the question. 3 Charles H. Koch, Jr., Administrative Law and Practice § 10.5 (2d ed.1997 & Supp. 2006).  The "most authoritative expression of the hard look approach," id., is the Supreme Court's decision in Motor Vehicle Mfrs. Ass'n of United States Inc. v. State Farm Mutual Automobile Insurance Co., 463 U.S. 29 (1983).  In State Farm, the Court explained that an agency decision is "arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." State Farm, 463 U.S. at 39.  See also Timken United States Corp. v. United States, 421 F.3d 1350, 1359 (Fed. Cir. 2005).  Plaintiffs have not cited State Farm or raised the hard look doctrine in this case.

## IV. Discussion

Plaintiffs raise six specific arguments challenging the Commission's denial of their reconsideration request.   None focus on a failure to consider relevant factors. Plaintiffs first argue that the Commission's factual finding that the antitrust conspiracy targeted a different type of PSF then the PSF subject to the antidumping duty order was predicated on an incomplete factual record, and that the Commission should have done more.   Pls.' Mem. in Supp. of Mot. for J. on Agency R. at 25-27.   Second, Plaintiffs argue that the record does not support the Commission's factual finding that the antitrust conspiracy did not extend to the merchandise subject to the antidumping duty order, and that the Commission placed too much weight on certain record evidence.[5] Id. at 27-31.   Third, Plaintiffs argue that the Commission improperly credited evidence placed on the record by Defendant-Intervenors.   Id. at 31-32.   Fourth, Plaintiffs argue that the Commission did not view the record evidence with balance and objectivity.   Id. at 32-34.   Fifth, Plaintiffs argue that the Commission acted inconsistently with the Ferrosilicon Reconsideration in protecting the integrity of its own proceedings.   Sixth, and finally, Plaintiffs argue that the Commission's denial of the reconsideration request applied a criminal law burden of proof to Plaintiffs' claim. Id. at 37-38.

After reviewing the record evidence, as well as the Ferrosilicon Reconsideration, the court understands why Plaintiffs might be frustrated with the Commission's handling of their reconsideration request.   Although Plaintiffs' arguments may have merit, the

---

[5] Specifically, Plaintiff argues that the Commission placed too much weight on its [[
                                                                                    ]]
Pls.' Mem. in Supp. of Mot. for J. on Agency R. at 25-27.

court cannot conclude that the Commission's denial of their reconsideration request is irrational.

## A. Completeness of Factual Record

Before declaring itself "satisfied with the completeness of the record," PSF Reconsideration Denial (Pub. Views) 22-23 n.158, the Commission collected information regarding Plaintiffs' antitrust allegations. The Commission accepted Plaintiffs' recommendation, proposed in their comments on the draft questionnaires, to include two questions in the purchasers' questionnaire addressing Plaintiffs' antitrust allegations. The Commission also worked with Plaintiffs to insure that their evidence was placed on the record in a timely fashion, attached as a public exhibit to Consolidated's Importers' Questionnaire Response. Ultimately, Plaintiffs submitted 37 exhibits totaling 1,641 pages and Defendant-Intervenors submitted nine exhibits totaling 182 pages pertaining to the antitrust allegations. Supplementing this documentary evidence was hearing testimony addressing Plaintiffs' antitrust allegations. Approximately 78 of 174 questions asked by the Commission at the hearing, or 45 percent of all Commissioner questions, focused on Plaintiffs' antitrust allegations. The Commission also requested and received additional evidence from Defendant-Intervenors.

After the hearing, the Commission gathered additional evidence regarding the antitrust conspiracy.[6] The Staff Report addressed Plaintiffs' antitrust allegations in

---

[6] [[

　　　　]].

section I, II, and V, and summarized the relevant record evidence in Appendix E.  See

CR at I-10-11, II-2-4, V-5, and Appendix B (CR-240).

Although Plaintiffs are disadvantaged because much of the evidence of the

antitrust conspiracy is under seal in the antitrust proceeding, and the Commission

possibly could have done more to access this information, the Commission here made

"active, reasonable efforts to obtain relevant data," Allegheny Ludlum Corp. v. United

States, 287 F.3d 1365, 1373 (Fed. Cir.  2002), and those efforts were not irrational.

### B. The Commission's finding that the antitrust conspiracy was not directed at PSF subject to the antidumping duty order

Plaintiffs' next three arguments are directed at the Commission's central finding

in denying the reconsideration request: "the record does not substantiate the theory that

the conspiracy in question covered products other than fine denier PSF for textile

applications." PSF Reconsideration Denial Pub. Views at 18.  According to the

Commission, this finding was supported by "1) the factual basis of Mr. Stanley's guilty

plea read by the lead prosecutor at Mr. Stanley's sentencing hearing on November, 15

2004, which superseded less detailed documentary evidence from 2002, indicating that

the conspiracy had targeted fine denier PSF, id. at 19; 2) certain information gathered

by the Commission;[7] and 3) the absence of unambiguous evidence indicating that the

antitrust conspiracy to which KoSa and Mr. Stanley pled guilty extended to PSF subject

to the antidumping duty order, see id. at 26-31, including the absence of any reference

to such a conspiracy in the 1,157-page transcript from the Dutton trial.    PSF

---

[7] [[

]]

<u>Reconsideration Denial</u> Pub. Views at 20."   Def.'s Resp. to Pls.'s Mot. for J. on the

Agency R. at 25-26.   The Commission also found that no purchaser other than certain

parties[8] reported knowledge of an antitrust conspiracy affecting certain PSF in their

questionnaire response.   <u>PSF Reconsideration Denial</u> Conf. Views at 31 (citing CR at II-

2 & n.4; PR at II-2 & n.4 (CR-240)).

### 1.  The Commission's reliance on certain information[9]

Plaintiffs argue that the Commission erred by relying on certain information

gathered by the Commission from a source[10] as "highly probative," claiming that the

Commission misconstrued that information,[11] which is contradicted by other evidence,

and that the source was not under oath.[12]   <u>See</u> Pls.' Mem. in Supp. of Mot. for J. on

Agency R. at 28.  Plaintiffs' arguments do have some merit.  The Commission chose to

speak with the source[13] after the hearing, which is informative because it indicates that

the Commission still harbored some uncertainty about the scope of the antitrust

conspiracy.  Although the Commission is authorized to conduct <u>ex parte</u> conversations,

19 U.S.C. § 1677f(a)(3), 19 C.F.R. § 207.2(f)(1) (2005), it is disappointing that the

Commission, an investigatory agency with subpoena power performing quasi-

adjudicatory functions, thought it wise to rely so heavily on the unrecorded statements

of one individual, not under oath, made during an <u>ex parte</u> telephone conversation.

---

[8] [[        ]]

[9] [[
       ]]

[10] [[                                                              ]]

[11] [[                                      ]]

[12] [[                                         ]]

[13] [[            ]]

Such a choice does seem to test the rationality of the Commission's decision.  Also, as

Plaintiffs point out, the statements relied upon appear inconsistent with **[[**

                    **]]** in other parts of the record.  Pls.' Mem. in Supp. of Mot. for

J. on Agency R. at 27-31.

      With that said, the Commission has explained that the information from the

source was supported by other evidence gathered by the Commission.[14]   The

Commission also defends the information provided by the source by detailing the

credibility of the source and the relationship of that source to **[[**

---

[14] **[[**

                                                                     **]]**

]].[15]  Def.'s Resp. to Pls.'s Mot. for J. on the Agency R. at 31-32. The court, therefore, cannot conclude that the Commission's reliance on the information provided by the source[16] is irrational.

### 2. The Commission's treatment of evidence placed on the record by Defendant-Intervenors

The Commission also attached probative value to certain evidence placed on the record by Defendant-Intervenors—the sworn affidavit of Mr. Stanley, the only individual to plead guilty to the antitrust conspiracy targeting fine denier PSF, stating that the conspiracy had not extended to PSF subject to the antidumping duty order.   Plaintiffs have a valid point that Defendant-Intervenors' submission of this document was "selective" and "self-serving," and the Commission's decision to accord it weight should be examined.  Pls.' Mem. in Supp. of Mot. for J. on Agency R. at 31.  The Commission,

---

[15] [[

[16] [[                                                                                    ]]

]]

however, explains that it only cited the affidavit as additional support for its finding that "[o]ther documents submitted by respondent interested parties explicitly cite an antitrust conspiracy that targeted fine denier PSF."  Def.'s Resp. to Pls.'s Mot. for J. on the Agency R. at 33 (quoting PSF Reconsideration Denial Pub. Views at 20 n.134).  The Commission notes, "[b]oth KoSa's statement of admissions filed in Canada, and the complaint filed in Koch v. Hoescht, reference a conspiracy to coordinate fine denier sales and allocate textile customers." Def.'s Resp. to Pls.'s Mot. for J. on the Agency R. at 33 (citing Sept. 30, 2005 Pub. Ex., Attach. 5 at paras. 12-13 and Attach. 7 at paras. 1-2 (CR-43)).  Given this explanation, the court cannot conclude that the Commission's utilization of this record evidence is irrational.

### 3.  Whether the Commission lacked objectivity and balance

Plaintiffs contend that in weighing the record evidence on the question of the scope of the antitrust conspiracy, the Commission lacked objectivity and balance. The court believes that Plaintiffs, who were operating at a significant disadvantage because much of the information relating to the antitrust conspiracy was under seal, made a good evidentiary showing before the Commission that the PSF antitrust conspiracy may have extended to the PSF subject to the antidumping duty order.  Although the Commission's reconsideration denial does not, in the court's view, fully reflect the contradictory evidence Plaintiffs proffered under challenging circumstances, the court is also cognizant of the standard of review operating in this case.  The court here is not the finder of fact, the Commission is.  The court's role is limited to (1) ensuring that the Commission considered the relevant factors and (2) reviewing the Commission's determination for rationality.  Plaintiffs have not argued that the Commission failed to

consider relevant factors.  As for the rationality of the Commission's finding that the PSF

subject to the antitrust conspiracy did not include the PSF subject to the antidumping

duty order, the court cannot conclude that the finding is irrational.

### C. The Ferrosilicon Reconsideration

In denying Plaintiffs' reconsideration request, the Commission addressed

Plaintiffs' argument that the facts of this case are analogous to those in the Ferrosilicon

Reconsideration, and therefore warrant similar treatment.  The Commission observed

that in the Ferrosilicon Reconsideration three domestic producers had been convicted of

price fixing, when price had been the "focal point" of the original investigation, and there

was evidence that these same producers had "made material misrepresentations and

omissions throughout the investigation relating to that issue." PSF Reconsideration

Denial Pub. Views at 23 (citing Ferrosilicon Reconsideration at 7-8).  Here, on the other

hand, the Commission determined that KoSa's antitrust violations did not undermine the

integrity of the record of the original investigations of PSF from Korea and Taiwan

because petitioners provided testimony and evidence consistent with an antitrust

conspiracy targeting fine denier PSF but not the PSF subject to the antidumping duty

order. Id.  The Commission also found that Plaintiffs' allegation that underselling

margins had been inflated by the conspiracy was unsupported by the record, which

indicated that underselling margins had generally narrowed during the two quarters of

the original investigation that overlapped with the antitrust violations to which KoSa pled

guilty. Id. at 23 & n.160.

As the Commission explained, the Ferrosilicon Reconsideration involved new

evidence of an antitrust conspiracy that affected the original injury determinations in a

definitive and concrete way, a fact that was apparent when the Brazilian ferrosilicon producers first filed their request for a changed circumstances review.  Plaintiffs were undoubtedly hoping that the new evidence of the antitrust conspiracy they uncovered among the domestic PSF producers would engender the same proactive response demonstrated by the Commission in the Ferrosilicon Reconsideration, but Plaintiffs failed to persuade the Commission that the evidence affected the original PSF injury determination in a definitive and concrete way.  Lacking unambiguous evidence of that effect, the Commission declined to institute a reconsideration proceeding in which it would be "ascertaining antitrust violations based upon conflicting or ambiguous evidence submitted in civil antitrust proceedings", something "outside the Commission's expertise."  PSF Reconsideration Denial Pub. Views at 22-23.  The differing course of action—declining to reconsider the PSF determination—therefore did not represent an irrational departure from the Ferrosilicon Reconsideration.

### D.  The "guilt beyond a reasonable doubt" burden of proof

Plaintiffs' sixth argument is that the Commission held Plaintiffs' reconsideration request to the "guilt beyond a reasonable doubt" burden of proof by relying on certain information gathered by the Commission.[17] Plaintiffs' argument begs the question of the proper burden of proof the Commission should have applied to Plaintiffs' reconsideration request, a question to which Plaintiffs do not provide an answer. Arguing about burdens of proof in this context is meaningless because the Commission

---

[17] [[



]]

does not apply "burdens of proof" in ruling on a reconsideration request.  Instead, the Commission renders a discretionary decision that is generally unreviewable except in the limited circumstance when the request is based on new evidence.

In this case the court is reviewing a claim that the Commission's refusal to reconsider its original determination despite new evidence is "arbitrary, capricious, [or] an abuse of discretion", 5 U.S.C. § 706(2)(A) (2000), when measured against the statutory factors composing the Commission's injury determination and the Commission's findings from the original determination.   Plaintiffs' burden of proof argument does not aid the court in analyzing whether the evidence of the antitrust conspiracy in question materially affected the Commission's original injury determination.   What the court needed to hear from Plaintiffs instead was how the record demonstrated that the new evidence materially affected the original PSF injury determination, something that Plaintiffs simply chose not to argue.

## V. Conclusion

Having reviewed the Commission's denial of Plaintiffs' reconsideration request, the court concludes that the Commission's denial was not "arbitrary, capricious, [or] an abuse of discretion", 5 U.S.C. § 706(2)(A) (2000).   Accordingly, the court denies Plaintiffs' motion for judgment upon the agency record and affirms the determination of the Commission.

_/s/ Leo M. Gordon_____
Judge Leo M. Gordon

Dated:   January 10, 2008
         New York, New York

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of  the  court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.


Tina Potuto Kimble
Clerk of the Court


Date: _____     By: _____
                                                      Deputy Clerk